## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDURRAHMAN ABDALLAH ALI MAHMOUD AL SHUBATI,** | ) ) ) |
| also known as | ) ) |
| ABD AL RAHMAN ABDULLAH ALI MUHAMMAD, Detainee, United States Naval Station at Guantánamo Bay, Cuba; and | ) ) ) ) |
| **ABDULLAH ALI MAHMOUD AL SHUBATI,** as Next Friend of Abdurrahman Abdallah Ali Mahmoud al Shubati, | ) ) ) ) ) ) |
| *Petitioners/Plaintiffs,* | ) ) |
| *v.* | ) ) |
| **GEORGE W. BUSH,** President of the United States The White House 1600 Pennsylvania Ave., N.W. Washington, D.C. 20500; | ) ) ) ) ) ) |
| **ROBERT M. GATES,** Secretary, United States Department of Defense 1000 Defense Pentagon Washington, D.C. 20301-1000; | ) ) ) ) ) ) |
| **REAR ADM. MARK H. BUZBY,** Commander, Joint Task Force – GTMO JTF – GTMO APO AE 09360; and | ) ) ) ) ) |
| **ARMY COL. BRUCE VARGO,** Commander, Joint Detention Group, JTF – GTMO JTF – GTMO APO AE 09360, | ) ) ) ) ) ) |
| *Respondents/Defendants.* | ) ) ) |

**PETITION FOR A WRIT
OF HABEAS CORPUS**

**CIVIL ACTION NO.** _____

## PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner Abdurrahman Abdallah Ali Mahmoud al Shubati ("Petitioner al Shubati") seeks the Great Writ. A Yemeni citizen, Petitioner al Shubati is a civilian who has been wrongly classified as an "enemy combatant" by the President of the United States and is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). He is being detained without lawful basis, without charge, and without access to counsel or to any fair process by which he might challenge his detention. Petitioner al Shubati acts on his own behalf and through his father and Next Friend Abdullah Ali Mahmoud al Shubati. He is being held under color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner al Shubati or to establish in this Court a lawful basis for his detention. This Court should also order injunctive and declaratory relief.

Petitioner al Shubati was previously included as a John Doe in the habeas petition brought in the case John Does Nos. 1-570 v. Bush, 05-CV-00313 (CKK), filed on February 10, 2005, on behalf of all of the unidentified detainees being held in military custody at Guantánamo. Counsel for the Doe petitioners in that case specifically noted that once counsel obtained the names and identifying information for detainees, counsel would "consult with each detainee, explain his right to file a habeas petition based on his individual circumstances, and determine whether the detainee wants to proceed with the habeas action." See Memorandum of Points and Authorities in Support of Petitioners' Motion to Proceed with a Petition for Writ of Habeas Corpus Using Fictitious Names, John Does Nos. 1-570 v. Bush, 05-CV-00313 (CKK), at 12, n.9. In accord with the practices articulated in John Does Nos. 1-570 v. Bush, counsel for Petitioner al Shubati now seeks to (1) proceed with Petitioner al Shubati's consultation on the

basis of the authorization received for him from his father and Next Friend Abdullah Ali Mahmoud al Shubati, (2) visit Petitioner al Shubati at Guantánamo, and (3) confirm that he wishes representation.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13, 2001, Executive Order, Respondents George W. Bush, President of the United States; Robert M. Gates, U.S. Secretary of Defense; Rear Admiral Mark H. Buzby, Commander of Joint Task Force – GTMO; and Army Colonel Bruce Vargo, Commander, Joint Detention Operations Group, Joint Task Force – GTMO (hereinafter collectively "Respondents") are ultimately responsible for the custody and control of Petitioner al Shubati or have been charged with the responsibility of maintaining custody and control of him while he is detained at Guantánamo.

## I.
## JURISDICTION

1.    Petitioner al Shubati brings this action pursuant to 28 U.S.C. §§ 2241(a), (c)(1), (c)(3), and 2242, and invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I, II, and III of the United States Constitution; and the Fifth and Sixth Amendments to the U.S. Constitution.   Because Petitioner al Shubati seeks declaratory relief, he also relies on Fed. R. Civ. P. 57.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus and to entertain the instant Petition under 28 U.S.C. § 2242.   This Court is further empowered to entertain the Petition pursuant to the United States Supreme Court's ruling in *Rasul v. Bush*, 542 U.S. 466 (2004).  This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201; to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves

an actual controversy within the Court's jurisdiction; and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## DETAINEE TREATMENT ACT OF 2005

3.     On December 30, 2005, Respondent George W. Bush signed the Detainee Treatment Act of 2005, Pub. L. No. 109-148, §§ 1001-1006, 119 Stat. 2680, 2739-45 (2005) ("DTA").   Section 1005(e)(1) of the DTA amended 28 U.S.C. § 2241 to eliminate the jurisdiction of the federal courts to hear or consider petitions for Writs of Habeas Corpus and other actions brought by or on behalf of detainees held in Guantánamo filed after the date of its enactment.

4.     Section 1005(e)(2)(A) of the DTA granted the United States Court of Appeals for the District of Columbia Circuit "exclusive jurisdiction" to determine the validity of any final decision of a Combatant Status Review Tribunal ("CSRT") that an alien is properly detained as an "enemy combatant."   Section 1005(e)(2)(C) also provided that the applicable "scope of review" by the Court of Appeals is limited to determining whether a final CSRT decision "was consistent with the standards and procedures specified by the Secretary of Defense," and "to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States."

5.     Section 1005(e)(3)(A) of the DTA granted the United States Court of Appeals for the District of Columbia Circuit "exclusive jurisdiction" to determine the validity of any final decision rendered by a military commission.   Section 1005(e)(3)(D) specified a "scope of review" analogous to that provided for the CSRT determinations.

6.      Section 1005(e) of the DTA fails to provide the full measure of process, rights and remedies required by the Suspension Clause of the United States Constitution, Art. I, § 9, cl. 2.

7.      Among other things, the CSRT process fails to provide an adequate substitute for habeas corpus. A CSRT is a non-adversary hearing conducted pursuant to rules and procedures that are unfair in design and biased in practice. For example, under the CSRT rules and procedures, every detainee is:

      (a)      Denied access to counsel;

      (b)      Denied the right to see the evidence against him;

      (c)      Denied the right to confront, or even know the identity of, his accusers;

      (d)      Denied the right to call witnesses;

      (e)      Denied the right to present evidence;

      (f)      Denied the right to know how the military collected evidence; and

      (g)      Denied an impartial tribunal because the CSRT must presume that evidence against a detainee (which he has not seen) is genuine and accurate.

The CSRT rules and procedures further allow for the consideration of hearsay evidence and/or evidence obtained by torture or coercion. These rules and procedures in practice and effect virtually compel the CSRT conclusion that the detainee is an "enemy combatant."

8.      The CSRTs are incapable of determining who is or is not properly detained by Respondents as an "enemy combatant." Even where a CSRT determines that a detainee is actually innocent of any offense or wrongdoing, that detainee may continue to be held virtually *incommunicado*, indefinitely, without charge, without access to counsel, and without any meaningful opportunity to challenge the legality of his detention. Respondents have held, and

continue to hold, detainees who have been determined through the CSRT process to be "no longer enemy combatants" or "non-enemy combatants" without affording them the right to an adequate and meaningful judicial process.

9.    The CSRT rules and procedures promulgated by Respondents are inconsistent with the Constitution and laws of the United States.

10.    Moreover, upon information and belief, Petitioner al Shubati's CSRT was not properly conducted in accordance with the CSRT rules and procedures promulgated or required to be promulgated by Respondents; the CSRT has not made a "final decision" that Petitioner al Shubati is properly detained as an "enemy combatant"; and/or the conclusion of the CSRT that Petitioner al Shubati is an "enemy combatant" is not supported by a preponderance of the evidence.

11.    Because Petitioner al Shubati was included in the case *John Does Nos. 1-570 v. Bush*, 05-CV-00313 (CKK), filed on February 10, 2005, on behalf of all of the unidentified detainees being held in Guantánamo, he is not subject to the strictures of the DTA under the United States Supreme Court decision in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006).

12.    Section 1005(e) of the DTA is unconstitutional on its face and as applied to Petitioner al Shubati because it violates the Suspension Clause of the United States Constitution, art. I, § 9, cl. 2. Section 1005(e) therefore does not deprive this Court of jurisdiction to hear and decide this Petition, as well as to grant the relief that Petitioner al Shubati seeks herein.

### III.
### PARTIES

13.    Petitioner al Shubati is a citizen of Yemen who is presently incarcerated and held unlawfully in Respondents' custody and control at Guantánamo, under the ISN #224.

14.    Petitioner's Next Friend is his father Abdullah Ali Mahmoud al Shubati, who is also a citizen of Yemen. Abdullah Ali Mahmoud al Shubati acts as Next Friend to his son

because Petitioner al Shubati has been denied access to legal counsel and to the courts of the United States. Abdullah Ali Mahmoud al Shubati acts as Next Friend in order to assist Petitioner al Shubati in seeking redress for these grievances.

15.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States military. Petitioner al Shubati is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner al Shubati's unlawful detention and is sued in his official capacity.

16.      Respondent Robert M. Gates is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or, alternatively, pursuant to the Executive Order, Respondent Gates has been charged with maintaining the custody and control of Petitioner al Shubati. He is sued in his official capacity.

17.      Respondent Rear Admiral Mark H. Buzby is the Commander of Joint Task Force – GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner al Shubati and is sued in his official capacity.

18.      Respondent Army Colonel Bruce Vargo is the Commander of the Joint Detention Operations Group and the JTF — GTMO detention camps, including the U.S. facility where Petitioner al Shubati is presently held. He is the immediate custodian responsible for Petitioner al Shubati's detention and is sued in his official capacity.

19.      Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of

private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees, or contractor employees.

## IV.
## STATEMENT OF FACTS

20.     Upon information and belief, Petitioner al Shubati is not and has never been an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the United States Government in any civil or military proceeding.

21.     Upon information and belief, Petitioner al Shubati is not and never has been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld,* 542 U.S. 507, 516  (2004).

22.     Petitioner al Shubati seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a cognizable legal and factual basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

23.     Upon information and belief, at the time of his seizure and detention, Petitioner al Shubati was not a member of Al Qaeda or the Taliban Government's armed forces.  Prior to his detention, he did not commit any violent act against any American person or property.  He was not involved, directly or indirectly, in the terrorist attacks on the United States on September 11, 2001, in the ensuing armed conflict, or in any act of international terrorism attributed by the United States to Al Qaeda.

24.    Upon information and belief, Petitioner al Shubati remains incarcerated at Guantánamo, a territory over which the United States exercises exclusive jurisdiction and control.

25.    Upon information and belief, Petitioner al Shubati has not been afforded any procedures that would satisfy his rights under the fundamental common law notions of due process, the Constitution, laws and treaties of the United States, or customary international law.

26.    Upon information and belief, Petitioner al Shubati desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### The Authorization for the Use of Military Force

27.    In the wake of the September 11, 2001 attacks, the United States, at the direction of President Bush, began a massive military campaign against the Taliban Government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against those "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("AUMF").

28.    Upon information and belief, as Petitioner al Shubati did not participate in the armed conflict at any point in time, and consequently he is not properly detained pursuant to the AUMF, President Bush's authority as Commander-in-Chief, or the laws and usages of war.

### The Executive Order

29.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

> (i)     is or was a member of the organization known as al Qaeda;
>
> (ii)    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have

caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

(iii)    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833 § 2 (Nov. 13, 2001).  President Bush must make this

determination in writing.  The Executive Order was neither authorized nor directed by Congress,

and is beyond the scope of the AUMF.

30.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face or the basis of his detention. The Executive Order authorizes detainees to be confined indefinitely without charges or the opportunity to challenge the basis for their detention.  It contains no provision for a detainee to be notified of his rights under domestic and international law.  It provides no means for a detainee to contact and secure counsel, no rights to notice of consular protection, and no rights to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  The United States Supreme Court in *Rasul v. Bush*, 542 U.S. 466 (2004), invalidated the Executive Order's provision barring federal review of the legality of the detainees' imprisonment.  The Executive Order purports to authorize indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

31.    The Executive Order was promulgated in the United States and in this judicial district; the decision to incarcerate Petitioner al Shubati was made by Respondents in the United

States and in this judicial district; the decision to detain Petitioner al Shubati at Guantánamo was made in the United States and in this judicial district; and the decision to continue detaining Petitioner al Shubati was, and is, being made by Respondents in the United States and in this judicial district.

32.     Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner al Shubati is subject to the Executive Order.

33.     Petitioner al Shubati is not properly subject to the Executive Order, and, in any event, the Executive Order is unjust, *ultra vires*, and violates the laws, treaties, and Constitution of the United States.  Respondents have unlawfully detained Petitioner al Shubati purportedly pursuant to President Bush's authority as Commander-in-Chief and/or under the laws and usages of war.

<h3 style="text-align:center">Guantánamo Bay Naval Station</h3>

34.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

35.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 542 U.S. 466 (2004).

36.     On a date unknown to counsel, but known to Respondents, the United States military transferred Petitioner al Shubati to Guantánamo, where he has been held ever since in the custody and control of Respondents.

## The Conditions of Detention at Guantánamo

37.     Upon information and belief, since gaining control of Petitioner al Shubati, the United States military has held him virtually *incommunicado.*

38.     Upon information and belief, Petitioner al Shubati has been or will be interrogated repeatedly by agents of the United States Department of Defense, Department of Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges. He has not appeared before any lawful military or civilian tribunal and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees, or customary international law. Respondents have taken the position that Petitioner al Shubati should not be informed of these rights. As a result, Petitioner al Shubati lacks any ability to protect or to vindicate his rights under domestic and international law.

39.     Upon information and belief, Petitioner al Shubati has been forced to provide involuntary statements to Respondents' agents at Guantánamo.

40.     Upon information and belief, Petitioner al Shubati has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman, and degrading treatment or punishment.

41.     Many of the violations that have occurred at Guantanamo Bay— including isolation for up to thirty days, twenty-eight-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror — were actually interrogation techniques approved for use at

12

Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62–65 (Apr. 4, 2003)[1]; *see also, e.g.*, Amnesty International, *Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power*, Ch. 12–13, AMR 51/063/2005 (May 13, 2005); Physicians for Human Rights, *Break Them Down: Systematic Use of Psychological Torture by US Forces*, Ch. 3 (2005); Press Release, United Nations, United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees, U.N. Doc. HR/4812 (Feb. 4, 2005); International Committee of the Red Cross, Operational Update, *US Detention Related to the Events of September 11, 2001 and Its Aftermath — the Role of the ICRC* (July 26, 2004); Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the "War on Terror"*, at 22 (Oct. 27, 2004), *available at* http://web.amnesty.org/library/Index/ENGAMR 511452004; Press Release, International Committee of the Red Cross, The ICRC's Work at Guantánamo Bay (Nov. 30, 2004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4–5.

42.    In a confidential report to the United States Government, the International Committee of the Red Cross ("ICRC") charged the United States military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*,

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23compositestatementFINAL23 july04.pdf. The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See* Assoc. Press, *Report Details Guantanamo Abuses*, Nov. 4, 2004.

N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche & Jonathan H. Marks, *When Doctors Go to War*, N. Engl. J. Med., Jan. 6, 2005, at 3–4.

43. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including twenty-four-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.*, Carol D. Leonnig, *Guantánamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land*, Wash. Post, Aug. 13, 2005, at A18; Amnesty International, *Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power*, Ch. 12–13, AMR 51/063/2005 (May 13, 2005); Amnesty International, *Guantánamo: An Icon of Lawlessness*, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26, 2004, at A1; Neil A. Lewis & David Johnston, *New F.B.I. Memos Describe Abuses of Iraq Inmates*, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen & R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo*, N.Y. Times, Dec. 7, 2004, at A19.

44. The Associated Press has also reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, during interrogations of Muslim detainees. *See* Assoc. Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005; Eric Saar & Viveca Novak, *Inside the Wire: A Military Intelligence Soldier's Eyewitness Account of Life at Guantánamo* 228 (2005).

45.    In fact, many of the egregious interrogation techniques used in the Abu Ghraib detention center and other detention facilities in Iraq — such as using aggressive dogs to intimidate detainees, sexually humiliating detainees, placing detainees in stress positions, and subjecting detainees to conditions designed to cause sensory deprivation — were pioneered at Guantánamo. *See* Josh White, *Abu Ghraib Dog Tactics Came From Guantanamo: Testimony Further Links Procedures at 2 Facilities*, Wash. Post, July 27, 2005, at A14; Josh White, *Abu Ghraib Tactics Were First Used at Guantanamo*, Wash. Post, July 14, 2005, at A1.

46.    The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct that is contrary to the requirements of due process, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, *Lawyers Describe Guantánamo Detainees*, Seattle Post-Intelligencer, Jan. 19, 2005.

47.    Respondents, acting individually or through their agents, have stated that the limitations applicable to coercive interrogation techniques used by United States military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. *See* Eric Lichtblau, *Gonzales Says '02 Policy on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen & Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Wash. Post, Jan. 18, 2005, at A4.

48.    In published statements, Respondents President Bush and the predecessor of Defense Secretary Gates, Former Defense Secretary Rumsfeld, and predecessors of Respondents Harris and Davis, respectively, Lenhert and Carrico, have proclaimed that the United States may

15

hold the detainees under their current conditions indefinitely. *See, e.g.*, Roland Watson, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lenhert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, *Extended Detention in Cuba Mulled*, Wash. Post, Feb. 13, 2002 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

49.    According to the Department of Defense, detainees who are adjudicated innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely. *See* Dep't of Defense Press Background Briefing of July 3, 2003, *available at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

50.    Counsel for Respondents have also consistently maintained that the United States may hold detainees like Petitioner al Shubati under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1. Moreover, the Government has begun constructing a new, more permanent facility at Guantánamo. *See* Drake Bennett, *The Road from Guantánamo*, Boston Globe, June 25, 2006; *see also* Christopher Cooper, *In Guantánamo, Prisoners Languish in a*

16

*Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1; *Guantánamo Takes on the Look of Permanency*, Assoc. Press, Jan. 9, 2005.

## Rendition

51.    During interrogations, detainees have also been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture.   Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture.  *See* Jane Mayer, *Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005, at 106.

52.    The United States Government's practice of extraordinary rendition has been well documented by major American and international news organizations, including, *inter alia*, the *Washington Post*, the *Los Angeles Times*, and the British Broadcasting Corporation ("BBC"). According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics — including torture and threats to families — that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest, *Long Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . ., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

53.    Upon information and belief, Petitioner al Shubati is at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## V.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (ARTICLE I — VIOLATION OF THE SUSPENSION CLAUSE)

54.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

55.    Respondents' arrest and continued detention of Petitioner al Shubati violates the United States Constitution, Habeas Corpus Suspension Clause, Art. I, § 9, cl. 2, because the Suspension Clause guarantees Petitioner al Shubati the right either to be charged criminally or to be released.  Petitioner al Shubati has been and continues to be detained without charge.

56.    Respondents' arrest and continued detention of Petitioner al Shubati violates the United States Constitution, Habeas Corpus Suspension Clause, Art. I, § 9, cl. 2, because the Suspension Clause guarantees Petitioner al Shubati the right to an adequate and meaningful judicial process.  Petitioner al Shubati has been and continues to be detained without such process.

57.·    Respondents have seized and continue to detain Petitioner al Shubati without affording him fundamental due process.

58.    To the extent that the DTA purports to remove this Court's jurisdiction over Petitioner al Shubati's habeas petition challenging the legality of his detention, Respondent's actions constitute an unlawful Suspension of the Writ of Habeas Corpus, in violation of Article I, § 9, cl. 2 of the United States Constitution.

59.    Accordingly, Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION — UNLAWFUL DEPRIVATION OF LIBERTY)

60.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

61.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals including Petitioner al Shubati, without due process of law, and the remaining Respondents have implemented those orders.  Respondents' actions deny Petitioner al Shubati the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

62.    To the extent that Petitioner al Shubati's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment to the United States Constitution on its face and as applied to Petitioner al Shubati.

63.    Accordingly, Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION — UNLAWFUL CONDITIONS OF CONFINEMENT)

64.     Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

65.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner al Shubati to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

66.     Accordingly, Petitioner al Shubati is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF

### (GENEVA CONVENTIONS — ARBITRARY DENIAL OF DUE PROCESS)

67.     Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

68.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner al Shubati the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

69.     Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law. As such, they constitute enforceable claims under 28 U.S.C. § 2241 (c)(3).

70.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

71.    Accordingly, Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF

### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW — ARBITRARY DENIAL OF DUE PROCESS)

72.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

73.    By the actions described above, Respondents have denied and continue to deny Petitioner al Shubati the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

74.    Because Respondents are detaining Petitioner al Shubati "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States," Petitioner al Shubati's claim arises under 28 U.S.C. § 2241, and he is entitled to habeas relief.

75.    Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## SIXTH CLAIM FOR RELIEF

## (ALIEN TORT STATUTE — TORTURE)

76.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

77.    Upon information and belief, by the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner al Shubati in order to obtain coerced information or confessions from him, to punish or intimidate Petitioner al Shubati, or for other purposes.  On information and belief, Petitioner al Shubati has been, among other abuses: held in and surrounded by conditions of isolation; left constantly vulnerable to repeated interrogation and severe beatings; threatened with or experienced the reality of being kept in a cage with no privacy; shackled with heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for prolonged periods of time because of minor rule infractions; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

78.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

79. Upon information and belief, Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner al Shubati.

80. Upon information and belief, Petitioner al Shubati was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE — WAR CRIMES)

81. Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

82. Upon information and belief, by the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner al Shubati constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions, and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

83. Upon information and belief, as a result of Respondents' unlawful conduct, Petitioner al Shubati has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to declaratory and injunctive relief, and such other relief as the court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE —
### CRUEL, INHUMAN, OR DEGRADING TREATMENT)

84.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

85.    Upon information and belief, the acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner al Shubati, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

86.    The acts described herein constitute cruel, inhuman, or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman, or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

87.    Respondents are liable for said conduct in that, on information and belief, they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman, or degrading treatment of Petitioner al Shubati.

88.    Upon information and belief, Petitioner al Shubati was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

## NINTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE — ARBITRARY ARREST
### AND PROLONGED ARBITRARY DETENTION)

89.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

90.     The acts described herein constitute arbitrary arrest and detention of Petitioner al Shubati in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

91.     Upon information and belief, Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner al Shubati in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

92.     Upon information and belief, as a result of Respondents' unlawful conduct, Petitioner al Shubati has been and is being deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse. Petitioner al Shubati is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## **TENTH CLAIM FOR RELIEF**

### **(ALIEN TORT STATUTE – ENFORCED DISAPPEARANCE)**

93.     Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

94.     Upon information and belief, by the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner al Shubati in violation of the law of nations under the Alien Tort Statute, 28 U.S.C.

§ 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

95.    Upon information and belief, as a result of Respondents' unlawful conduct, Petitioner al Shubati has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory and injunctive relief and such other relief as the court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF

### (ARTICLE II OF THE UNITED STATES CONSTITUTION — UNLAWFUL DETENTION)

96.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

97.    Upon information and belief, Petitioner al Shubati is not and has never been an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 542 U.S. 507, 522 n.1 (2004).

98.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering, and directing that military officials seize Petitioner al Shubati and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner al Shubati.

99.    The military seizure and detention of Petitioner al Shubati by the Respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner al Shubati's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner al Shubati.

100.    To the extent that Respondents assert that their authority to detain Petitioner al Shubati derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

101.    Accordingly, Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA — ARBITRARY
### AND CAPRICIOUS UNLAWFUL DETENTION)

102.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

103.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

104. By arbitrarily and capriciously detaining Petitioner al Shubati in military custody for over four years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

105. Accordingly, Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA — ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

106. Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

107. Upon information and belief, by the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner al Shubati the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8, in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

108. Accordingly, Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA — TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

109. Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

110. Upon information and belief, by the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming,

ratifying, and/or conspiring to unlawfully subject Petitioner al Shubati to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

111.    Accordingly, Petitioner al Shubati is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF

### (FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION — VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

112.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

113.    Upon information and belief, Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner al Shubati's right to consult with counsel by conditioning counsel's access to Petitioner al Shubati on unreasonable terms, including classification and declassification procedures, in violation of Petitioner al Shubati's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

114.    Accordingly, Petitioner al Shubati is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE — RENDITION)

115.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

116.    Upon information and belief, Petitioner al Shubati is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer

of Petitioner al Shubati to a country where he faces a foreseeable and direct risk that he will be tortured constitutes a violation of Petitioner al Shubati's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

117.    Accordingly, Petitioner al Shubati is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

### (CONVENTION AGAINST TORTURE AND CONVENTION RELATING TO THE STATUS OF REFUGEES — RENDITION)

118.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

119.    Upon information and belief, Petitioner al Shubati is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner al Shubati to a country where he faces a foreseeable and direct risk that he will be tortured constitutes a direct violation of Petitioner al Shubati's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of  Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

120.    Accordingly, Petitioner al Shubati is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## EIGHTEENTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE — RENDITION)

121.    Petitioner al Shubati incorporates by reference all preceding paragraphs as if set forth fully herein.

122.    Upon information and belief, Petitioner al Shubati is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer

of the Petitioner al Shubati to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner al Shubati's rights under customary international law, which may be vindicated under the Alien Tort Statute.

123.    Accordingly, Petitioner al Shubati is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

# VI.
## PRAYER FOR RELIEF

WHEREFORE, Petitioner al Shubati prays for relief as follows:

1.    Designate Abdullah Ali Mahmoud al Shubati as the Next Friend of Petitioner al Shubati;

2.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioner al Shubati from his current unlawful detention;

3.    Order that Petitioner al Shubati immediately be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights;

4.    Order that Petitioner al Shubati cannot be transferred to any other country while this action is pending without the specific, written agreement of Petitioner al Shubati and Petitioner al Shubati's counsel;

5.    Order that Petitioner al Shubati cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioner al Shubati will be subject to torture;

6.    Order Respondents to allow counsel immediately to meet and confer with Petitioner al Shubati, in private and unmonitored attorney-client conversations;

7.      Order Respondents to cease all interrogations of Petitioner al Shubati, direct or indirect, while this litigation is pending;

8.      Order Respondents to cease all acts of torture; cruel, inhuman and degrading treatment; and outrages upon the personal dignity of Petitioner al Shubati;

9.      Order and declare that Section 1005(e) of the DTA violates the Habeas Corpus Suspension Clause of the United States Constitution;

10.      Order and declare the Executive Order of November 13, 2001, is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, federal common law, the treaties of the United States, and customary international law;

11.      Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner al Shubati without due process is arbitrary, unlawful, and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international human rights and humanitarian law; and

12.     Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner al Shubati's rights under the United States Constitution, federal statutory law, the common law, and international law.

Dated: December 18, 2007

Respectfully submitted,

Counsel for Petitioner:

_____

Brent N. Rushforth (DC 331074)
Kit A. Pierson (DC 398123)
Sarah B. Pojanowski (DC 502036)
Jenny L. Workman (DC 502584)
Elizabeth S. Arora
Janet E. Haws
**HELLER EHRMAN LLP**
1717 Rhode Island Avenue, NW
Washington, DC 20036
Tel: (202) 912-2000
Fax: (202) 912-2020

Shayana Kadidal (DC 49512)
Pardiss Kebriaei (DC 51395)
**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner al Shubati hereby certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner al Shubati without compensation.

Dated: December 18, 2007

_____

Brent N. Rushforth (DC 331074)
Kit A. Pierson (DC 398123)
Sarah B. Pojanowski (DC 502036)
Jenny L. Workman (DC 502584)
Elizabeth S. Arora
Janet E. Haws
**HELLER EHRMAN LLP**
1717 Rhode Island Avenue, NW
Washington, DC 20036
Tel: (202) 912-2000
Fax: (202) 912-2020

Shayana Kadidal (DC 49512)
Pardiss Kebriaei (DC 51395)
**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

CERTIFICATE OF SERVICE

I hereby certify that, on this 18th day of December, 2007, I caused a true and correct copy of the foregoing instrument to be served on the following persons via First-Class, Postage Prepaid U.S. Mail:

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Rear Admiral Mark H. Buzby**
COMMANDER, JOINT TASK FORCE-GTMO
JTF-GTMO
APO AE 09360

**Army Col. Bruce Vargo**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

**Michael B. Mukasey**
ATTORNEY GENERAL OF THE UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530

**Robert M. Gates**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Rear Admiral Mark H. Buzby**
UNITED STATES NAVY
Navy Pentagon
Washington, D.C. 20350-0200

**Army Col. Bruce Vargo**
UNITED STATES ARMY
Army Pentagon
Washington, D.C. 20310-0200

Deborah Raichelson
Heller Ehrman

# Authorization for Representation

**Authorization**

Date:_____

My name is ~~Abd~~ ~~Al-Rahman~~ Abdullah Ali Mahmoud Al-shabati عبد الله علي محمود على الشباطي     I am acting as next friend for my ___Son___, whose name is Abdul rahman Ali Mohamed Al shabati عبد الرحمن علي محمد علي الشباطي
a citizen of ___Yemen___, who is being held in Guantánamo Bay.

I know that he would want me to act on his behalf to secure legal representation for him. I hereby authorize Michael Ratner and Barbara Olshansky of the *Center for Constitutional Rights* and any person assigned by these lawyers to act on my behalf and on my relative's behalf, to secure any documents and information concerning my relative that are necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the Courts of the United States and in any other legal forum available.

Signature:_____

Print Name:_____

Witnessed by:_____

Print Name:_____

07-2338
CKK

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

**I (a) PLAINTIFFS**

Abdurrahman Abdallah Ali Mahmoud al Shubati, Detainee, and Abdullah Ali Mahmoud al Shubati, as Next Friend

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Guantanamo Bay
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Brent N. Rushforth (DC 331074)
Hol A. Pierson (DC 368123)
Sarah B. Rojanowski (DC 502036)
Jenny L. Workman (DC 502584)
Elizabeth B. Arora
Janet E. Hews
Heller Ehrman LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
1(202) 912-2000

Shayana Kadidal (DC 496512)
Pardiss Kebriaei (DC 51395)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6439

**DEFENDANTS**

George W. Bush, President of the United States; Robert M. Gates, Secretary, United States; Rear Admiral Mark H. Buzby, Commander, Joint Task Force-GTMO; Army Colonel Bruce Vargo, Commander, Joint Detention Group, JTF-GTMO

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:07-cv-02338
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 12/31/2007
Description: TRO/PI

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government
  Plaintiff

O 3 Federal Question
  (U.S. Government Not a Party)

⊙ 2 U.S. Government
  Defendant

O 4 Diversity
  (Indicate Citizenship of
  Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. Antitrust**

☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
    Administrative Agency is Involved)

**⊗ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O E. General Civil (Other)**       OR       **O F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
    defendant
☐ 871 IRS-Third Party 26
    USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
    of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
    Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
    Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
    Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
    Exchange
☐ 875 Customer Challenge 12 USC
    3410
☐ 900 Appeal of fee determination
    under equal access to Justice
☐ 950 Constitutionality of State
    Statutes
☐ 890 Other Statutory Actions (if
    not administrative agency
    review or Privacy Act

—0—

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☒ 530 Habeas Corpus-General ☒ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. § 2241 et seq., U.S. Constitution art. I-III, am. 5-6: Petitioner seeks the writ of habeas corpus and other related relief

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ Check YES only if demanded in complaint **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☒ NO ☐ If yes, please complete related case form.

DATE 12/18/2007    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.